UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR ANDERSON,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :     3:20cv1258 (MPS) |
| | : |
| UNIVERSITY OF CONNECTICUT<br>HEALTH (CMHC), et al.,<br>    *Defendants*. | :<br>:<br>: |

# INITIAL REVIEW ORDER

The *pro se* plaintiff, Victor Anderson, a pretrial detainee[1] in the custody of the Connecticut Department of Correction ("DOC") who is proceeding *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against University of Connecticut Health ("CMHC") and thirteen DOC employees: DOC Commissioner Angel Quiros, DOC Medical Chief Operating Officer ("COO") Robert Richeson, Chief Medical Director Dr. Kennedy, Health Service Supervisor Colleen Gallagher, Dr. Ingrid Feder, "RCOO" Carla Ocampo, "RCOO" Krustan Shea, APRN Dawn Lee, APRN Loreen Williams, APRN Mallory Muzykoski, RN Janine Brennan, RN Stephanie Fraser, and Correction Officer Rivard. Compl. [ECF No. 1]. He alleges violations of the Eighth Amendment and Fourteenth Amendment Due Process and Equal Protection Clauses to the United States Constitution and a common law claim of negligence.[2] He requests damages and a declaratory judgment and an injunction.

---

[1] *See* ECF No. 1 at ¶ 3. The Connecticut DOC website confirms that he is a pretrial detainee. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=184802. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

[2] The court will not address the plausibility of Anderson's claim under Connecticut law because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims**.** The state law claim may be addressed later by the defendants in a motion to dismiss or a motion for summary judgment.

For the following reasons, the court will permit Anderson's claims of Fourteenth Amendment deliberate indifference to proceed against some of the defendants in their individual and official capacities.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. ALLEGATIONS

On September 23, 2019, Anderson informed John Doe Nurse about his hernia in his right

groin area that caused him pain when he moved in certain ways, including climbing. ECF No. 1 at ¶ 22. John Doe Nurse instructed him to submit a medical inmate request regarding his groin hernia and his concern about having to climb to a top bunk. *Id.* at ¶ 23.

On September 29, 2019, Anderson was seen by Nurse Fraser, who examined his hernia, which she noted was grape size and would get bigger with movements. *Id.* at ¶ 24. At that appointment, Anderson explained that he experienced pain when climbing to a top bunk. *Id.* at ¶ 25. Nurse Fraser responded that she would not provide him with a lower bunk and that she could only issue a seven-day temporary pass; Anderson's allegations appear to indicate that she did not issue this pass. *Id.* at ¶ 26. Anderson was informed that he would see a provider in the morning and that one day would not cause too much damage. *Id.* at ¶ 27. However, Anderson did not see a provider until October 15, 2019. *Id.* During the time he waited to see the provider, his hernia grew to a golf ball size and he experienced pain. *Id.*

Anderson filed two more medical inmate requests complaining about his pain and difficulties climbing up to and down from his bunk. *Id.* at ¶ 28. He also wrote a grievance about these conditions and his need to see a provider. *Id.* at ¶ 29. Health Services Reviewer Brennan responded that he did not meet the bottom bunk criteria of Policy 2.03, and he was told the same thing on two other medical visits and in two more responses. *Id.* at ¶ 30.

Corrigan-Radgowski Correctional Center medical unit provided him with a medical pamphlet explaining how an inguinal hernia can be worsened through certain movements such as lifting, climbing and jumping, and that an inguinal hernia can cause death if left untreated. *Id.* at ¶¶ 31-32.

On October 15, 2019, Anderson was seen by APRNs Lee and Williams. *Id.* at ¶ 33. They observed that he had a golf ball size inguinal hernia, tender to the touch and painful with movement. *Id.* They informed him that he would need surgery and gave him a belt (that was small) and stool softeners but no pain medication. *Id.* Anderson was still denied a bottom bunk because he did not meet the criteria of the 2.03 Policy. *Id.* at ¶ 34. He explained to the two APRNs that his inguinal hernia had increased in size and was painful; he also explained that he would not be able to climb up the ladder to his bunk with the small hernia belt due to the location of the hernia against his leg. *Id.* at ¶ 35.

APRN Lee responded, "Suck it up. We can't give everybody a bottom bunk." *Id.* at ¶ 36. She also indicated that although he could be provided with a bottom bunk, he would not be provided with one. *Id.*

APRN Williams recommended that he go back to his unit and try applying pressure on the hernia with his hand while climbing. *Id.* at ¶ 37. She indicated that they would see what they could do for him about the bottom bunk. *Id.*

On the morning of October 16, 2019, Anderson was having a painful and difficult time with movement. *Id.* at ¶ 38. He pleaded with Officer Rivard about the pain in his hernia and requested medical attention. *Id.* at ¶ 38. Officer Rivard responded that he would not make a call to medical as there was nothing wrong with Anderson. *Id.* He suggested Anderson drop a medical inmate request. *Id.*

After Anderson returned from breakfast, he could barely walk or climb stairs to reach his cell. *Id.* at ¶ 40. He tried to climb up the ladder to the top bunk, but he felt a sharp pain in his hernia. *Id.* at ¶ 41. He lost his grip, fell backwards and hit his head and back on a chair. *Id.*

Anderson lost consciousness. *Id.* When he regained consciousness, he found himself on the floor and started to yell for help. *Id.* at ¶ 42. His cellmate returned and heard him screaming. *Id.* Anderson assumes his cellmate called for Officer Rivard, who came to the cell. *Id.*

Anderson informed Officer Rivard about what happened, and as Anderson tried to stand, he "fell unconscious yet again." *Id.* at ¶ 43. He woke up again and felt pain, nausea, and dizziness. *Id.* at ¶ 44.

After Lieutenant Bowers inquired about what happened, Anderson explained that he fell off the ladder. *Id.* at ¶ 45. Lieutenant Bowers informed him that medical staff was on its way. *Id.*

Nurse Brennan arrived and asked Anderson where he felt pain. *Id.* at ¶ 47. Anderson informed her that he had pain in his back, head and hernia. *Id.* She instructed six officers to carry Anderson to the medical unit. *Id.* at ¶¶ 47-48.

At the medical unit, Anderson was treated by Nurses Hill and Brennan for injuries from his fall. *Id.* at ¶ 48. Anderson described his symptoms after the fall and also informed them that his hernia grew in size after the fall. *Id.*

Anderson was told that he had to wait for a provider to examine him. *Id.* at ¶ 49. Later, APRN Williams observed two lumps on Anderson's head and ordered x-rays of his back. *Id.* at ¶ 50. She also provided him with a bottom bunk and placed him on observation. *Id.*

After Anderson asked her about getting an MRI or Ct-scan due his dizziness, Williams responded that the headaches and dizziness would go away, and she ordered him five days of muscle relaxants. *Id.* at ¶ 51. However, eight months later, Anderson was still experiencing migraine headaches. *Id.*

Thereafter, Anderson filed seven medical inmate requests about his back pain, migraines,

5

memory problems, dizziness, numbness, and hernia pain. *Id.* at ¶ 52.

He filed a second grievance about not getting proper medical treatment that was rejected by Nurse Brennan because he had received the bottom bunk. *Id.* at ¶ 53.

On November 11, 2019, Anderson was seen by Dr. Feder. *Id.* at ¶ 54. Anderson explained all of his medical issues about back pain, migraines, memory problems, dizziness, numbness, vertigo, not being able to sit for long periods of time, weight loss, and not feeling as if he could get off of his bunk. *Id.*

Dr. Feder ordered him an MRI and gave him a cane. *Id.* at ¶ 55. She stated that he likely damaged discs in his back and that he had post-concussion syndrome after having an untreated concussion. *Id.* She ordered him muscle relaxants for his back and Ibuprofen but no treatment for his migraines and hernia. *Id.*

Anderson later wrote to RCOO Ocampo to seek relief because he was in daily pain and to report that medical staff had not taken his hernia seriously until after he fell. *Id.* at ¶ 56. She responded that she saw nothing improper in his medical records and gave him the same recommendation about pushing on his hernia as had been provided by APRN Williams. *Id.* at ¶ 57. However, Anderson maintains this recommendation is impossible to apply because his hernia will not push back in while he is standing up. *Id.*

In November through December 2019, Anderson wrote five more medical inmate requests, seeking relief from his back pain, hernia, and migraines. *Id.* at ¶ 58.

On December 12, 2019, he went to UConn for a pre-hernia surgery visit. *Id.* at ¶ 59. His hernia had grown to baseball size. *Id.* Anderson discussed the risks of an inguinal hernia of this size and location. *Id.*

Anderson's appeal from his grievance #22407 was upheld in his favor, stating that the bottom bunk Policy 2.03 had been discontinued and bottom bunks should be handled on a case by case basis. *Id.* at ¶ 60.

Anderson subsequently filed more grievances on Officer Rivard for denying him access to medical treatment. *Id.* at ¶ 61.

On February 3, 2020, Anderson's MRI showed that he had multiple issues with discs in his spine. *Id.* at ¶ 62. Dr. Feder requested that Anderson be seen by orthopedics who could provide advice on the best options for his treatment. *Id.*

From February through June 15, 2020, Anderson wrote more than fifteen more medical inmate requests seeking relief about his chronic pain, slow movement, lack of pain medication, ineffective pain medication, and the failure to provide him with medical treatment. *Id.* at ¶ 63. Due to COVID-19, Anderson's Ibuprofen was discontinued without any substitute pain relief medication. *Id.* at ¶ 64.

On June 15, 2020, Dr. Feder finally ordered Anderson something for his pain. Thus, he had been left to deal with his hernia pain without effective pain medication from September 23, 2019 to June 15, 2020. *Id.* at ¶ 65.

At present, Anderson has daily migraines, and he has not received medical treatment for his hernia, back pain, and disc problems. *Id.* at ¶ 68.

**III.   DISCUSSION**

Anderson asserts violations of the Eighth and Fourteenth Amendments based on the alleged inadequate medical care and lack of equal protection. Because Anderson was a pretrial detainee, his claims are analyzed under the Fourteenth Amendment Due Process Clause rather

than the Eighth Amendment, which applies to sentenced prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34, n.9 (2d Cir. 2017). Thus, the court must dismiss Anderson's Eighth Amendment claims.

Further, Anderson cannot assert any section 1983 claim against the University of Connecticut Health ("CMHC") because CMHC, as division of a state agency, is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983); *Blaine v. UConn Health Care*, No. 3:18-CV-359 (MPS), 2018 WL 1368909, at *2 (D. Conn. Mar. 16, 2018) (dismissing clam against CMHC because it is a division of a state agency and not "person" subject to suit.)

Thus, the court will consider whether Anderson has stated any plausible claims under the Fourteenth Amendment Due Process and Equal Protection Clauses against the individual defendants.

    **A.**     **Personal Involvement**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). A plaintiff may only recover damages against a supervisory official by showing that

the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[3] In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury.). A general allegation that a defendant failed to supervise subordinates is insufficient to establish personal involvement without a factual connection between that supervisory defendant's alleged failure and the alleged resulting harm to the plaintiff. *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (639 (S.D.N.Y. 2016) (citing cases).

Anderson has named COO Richeson, Director Kennedy, Health Service Supervisor Gallagher, Krustan Shea, and APRN Muzykoski as defendants in this action. However, he has not alleged any factual allegations describing conduct by these defendants in the body of the

---

[3] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, without further Second Circuit guidance on this issue, the court assumes for purposes of this ruling that the categories outlined in *Colon* remain valid.

complaint. In his claims for relief, he asserts that Muzykoski violated the Fourteenth Amendment by failing to provide him with pain medication. But Anderson has not provided any factual allegations that he was ever treated by Muzykoski, that he requested pain medication from her, or that she had any involvement with his medical conditions.

He also alleges that the "UConn Health Supervisors/DOC Medical Supervisors" are liable for failure to train the staff about the continuation or discontinuation of the 2.03 Policy. Anderson's factual allegations fail to suggest that these supervisors were aware of the alleged constitutional violation stemming from deliberate indifference to Anderson's need for a bottom bunk, but failed to remedy the situation; created or perpetuated a policy or custom for this unconstitutional practice to occur; or were grossly negligent in managing subordinates who erroneously denied Anderson his bottom bunk. Anderson's complaint has not alleged facts to satisfy the elements for such a supervisory liability claim, and he cannot sue a supervisory defendant for damages solely because of the defendant's supervisory position. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983).

Accordingly, the court will dismiss without prejudice the claims for damages againt COO Richeson, Director Kennedy, Health Service Supervisor Gallagher, Krustan Shea, and APRN Muzykoski.

### B. Deliberate Indifference to Medical Needs

To establish a claim based on a denial of medical needs in violation of the Fourteenth Amendment, the pretrial detainee must establish that "the challenged conditions were sufficiently

serious to constitute objective deprivations of the right to due process," and that "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Under the Fourteenth Amendment analysis, the "serious medical need standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty*, 925 F.3d 73, 86 (2d Cir. 2019). To determine whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, the court should "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects the individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.* at 86.

Relevant to the second or "*mens rea*" factor, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

For purposes of initial review, Anderson's allegations concerning his medical conditions (hernia and related need for a bottom bunk, back pain, disc issues, concussion, and post-concussion problems and migraines) satisfy the Fourteenth Amendment requirement for objectively serious medical conditions. Anderson alleges deliberate indifference by APRN Lee, APRN Williams, Stephanie Fraser, and RN Brennan due to their failure to provide him with a

11

bottom bunk[4] (ECF No. 1 at ¶ 72); by Dr. Feder due to her failure to provide him adequate pain medication for his inguinal hernia until June 15, 2020 (*id.* at ¶ 74); by Dr. Feder, APRN Lee, and APRN Williams due to their failure to provide him with adequate pain medication despite his complaints of back pain and migraine headaches (*id.* at ¶ 75); and by Correction Officer Rivard for failing to respond to his requests for medical attention (*id.* at ¶ 76). Anderson has also asserted a plausible claim against Ocampo for deliberate indifference based on her alleged failure to provide him relief after he complained about being in daily pain and medical staff's failure to take his hernia seriously. *Id.* at ¶¶ 56-57.

Anderson claims that Quiros was aware of the staff failure to provide him with adequate treatment through his habeas petition. *Id.* at ¶ 77. Although this allegation is somewhat vague and provides no information about what specific medical treatment or staff failures he complained about to Quiros, his complaint reflects that he has not yet received his hernia surgery or review of his disc problem in his back and his Ct-scans related to his head injury. *See* ECF No. 1 at ¶¶ 74, 84. Thus, the court will permit this claim to proceed against Quiros for further development.

### C.    Equal Protection

To prevail on an Equal Protection claim, a plaintiff must prove that he was treated differently from other similarly situated individuals and the different treatment was based on

---

[4] To the extent Anderson seeks to assert a Section 1983 claim based on violation of the existing bottom bunk policy, such failure does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted). This claim will also be dismissed.

"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609-10 (2d Cir. 1980)).

A plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Here, Anderson has not established that he has been discriminated against based upon impermissible considerations such as race, national origin, religion or any other suspect class. Moreover, he has not alleged a plausible class of one equal protection claim. His allegations fail to allege any facts about comparators who are plausibly so similarly situated to him as to raise an inference that no rational basis exists for the differential treatment. Anderson's equal protection claims are dismissed as not plausible.

### D. Official Capacity Claims

Anderson's complaint states that he asserts his claims against all defendants in their official capacities except for Correction Officer Rivard. ECF No. 1 at p 1.

As an initial matter, any claims based on constitutional violations for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Thus, the court will dismiss Anderson's request for a declaration that the defendants have violated his rights in the past. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Furthermore, resolution of Anderson's claims in this case will determine whether he has sustained any violation of his rights due to a defendant's conduct.

Anderson requests injunctive orders to provide him with inguinal hernia surgery; to have a specialist review his discs in his back and CT-scan of his injuries; and to provide for proper

14

medication for his migraines, back pain, and hernia. These requests for injunctive relief present plausible relief for the on-going Fourteenth Amendment deliberate indifference to his pain from migraines, back and hernia. Thus, the court will permit these claims for injunctive relief to proceed against COO Richeson, Dr. Kennedy, Health Service Supervisor Gallagher, Dr. Feder, and Commissioner Quiros, who plausibly could provide Anderson with the requested relief. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act).

### IV.    ORDERS

The Court enters the following orders:

(1) The case shall proceed on Anderson's Fourteenth Amendment deliberate indifference claims against Commissioner Angel Quiros, APRN Lee, APRN Williams, Stephanie Fraser, RN Brennan, Dr. Feder, RCOO Ocampo, and Officer Rivard in their individual capacities for damages. His Fourteenth Amendment claim for injunctive relief may also proceed against COO Richeson, Dr. Kennedy, Health Service Supervisor Gallagher, Dr. Feder and Commissioner Quiros in their official capacities.

All other federal claims are DISMISSED without prejudice. If Anderson believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this order.

(2) The clerk shall verify the current work address of Commissioner Angel Quiros, APRN Dawn Lee, APRN Loreen Williams, RN Stephanie Fraser, RN Brennan, RCOO Carla Ocampo, Dr. Ingrid Feder, and Correction Officer Rivard with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the

waiver request on the **thirty-fifth (35th) day** after mailing. If the defendants fail to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants, COO Robert Richeson, Chief Medical Director Dr. Kennedy, Health Service Supervisor Colleen Gallagher, Dr. Ingrid Feder, and Commissioner Angel Quiros, in their official capacities.

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)   If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 29th day of October 2020, at Hartford, Connecticut.